# IN THE COURT OF APPEALS OF IOWA

No. 22-1782
Filed December 6, 2023

**QUANTRELL LIQUAN MCDANIEL,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

　　Quantrell McDaniel appeals the denial of his application for postconviction relief. **AFFIRMED.**

　　Debra S. De Jong of De Jong Law Firm, P.C., Orange City, for appellant.

　　Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

　　Considered by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

Quantrell McDaniel appeals the denial of his application for postconviction relief that challenged his guilty plea to second-degree murder. At the hearing on his application, McDaniel told the district court: "I never wanted to take this plea. I took it because that's what I was told was best for me and what I should do." Upon our de novo review of the record, *see Sothman v. State*, 967 N.W.2d 521, 522 (Iowa 2021), we affirm the court's rejection of this claim of ineffective assistance of trial counsel.

Late in the morning on the second day of McDaniel's trial for first-degree murder and going armed with intent—after a jury had been selected and sworn in—he accepted a "Hail Mary" of a plea deal his attorneys managed to secure from the State. The parties agreed McDaniel would plead guilty to the lesser offense of second-degree murder in exchange for the State's dismissal of the other count. After a long colloquy with McDaniel, the district court accepted his plea and scheduled a sentencing hearing.

The day before his sentencing in March 2017, McDaniel filed a pro se motion in arrest of judgment asserting:

> 1. I feel that I was a little pressured by my attorneys to take the plea agreement and had very little time to think on my own.
> 2. My attorneys also were telling me to take the plea or I would be found guilty of charges murder in the first and receive [a] life sentence. They also were telling me that I'm guilty already as charge[d].

But at the hearing the next day, McDaniel withdrew his motion. The court then sentenced him to prison for a term not to exceed fifty years, with a mandatory minimum of thirty-five years.

McDaniel applied for postconviction relief in January 2019. In an amended application, he claimed that his trial attorneys "were ineffective in . . . advising [him] to plead guilty to second-degree murder." Both of McDaniel's experienced trial attorneys—Mike Adams and Jill Eimermann—testified at his hearing in August 2022. Each recalled that McDaniel had rejected an earlier offer from the State to plead guilty to second-degree murder. But Adams said that as trial approached, McDaniel "didn't want to take his chances at trial, he wanted second degree murder." That was apparent from a pro se motion McDaniel filed the week before trial, asking the prosecutor to agree to "a plea of 35 years with 70%." Adams testified that he and Eimermann presented the last-minute deal to McDaniel by

> explain[ing] to him that it's his choice, we're there, we're ready to go to trial. . . . I basically told him and we told him it's your choice. If that is what you want, we have found a way to get it to you. If you don't want that, our only other choice is to go to trial and take our chances.

Eimermann thought that while she "may have been very clear in what [she] thought he ought to do," she would not have pressured him to plead guilty because, "at the end of the day, my clients, it's a choice that they each have to make."

Yet McDaniel testified he felt pressured, explaining:

> There was pressure because I felt like my attorneys was constantly telling me like, man, this is the best thing for you to do, this is what you should do, our chances of winning is slim. So if a person is sitting there telling me we don't have a good chance to beat this thing, so that's basically saying if you don't take this plea, you're going to lose, you need to take the plea, that's what you need to do.

On cross, McDaniel was confronted with the statements he made to the court during his guilty plea colloquy, including that he was satisfied with his attorneys' advice; no promises or threats had been made to get him to plead guilty;

his decision was his "own voluntary right and act"; and he understood his rights, the nature of the charge, and the consequences of his guilty plea. When asked whether he lied to the judge when making those statements, McDaniel said, "I just don't think I understood the seriousness of the questions that he [was] asking me." He also testified, "My attorney told me to say that, say 'yes' to everything [the judge] said in order to get the plea, so I said 'yes.'"

In its ruling denying McDaniel's application, the district court concluded McDaniel failed to prove that his attorneys' performance fell below the standard of reasonable competence. The court found the attorneys provided "sound counsel" to McDaniel about his plea and the record showed he "made a knowing and voluntary decision to accept the plea." So the court denied McDaniel's postconviction-relief application.

Claims of pre-plea ineffective assistance of counsel bearing on the voluntary and intelligent nature of the plea survive the plea itself. *See Castro v. State*, 795 N.W.2d 789, 793 (Iowa 2011). To prevail on a claim of ineffective assistance of counsel, McDaniel must establish, by a preponderance of the evidence, that (1) counsel failed to perform an essential duty, and (2) this failure resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sothman*, 967 N.W.2d at 522. Failure to prove either prong will preclude relief. *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017). We agree with the district court that the first prong is dispositive.

On appeal, McDaniel concedes the district court followed the guidelines of Iowa Rule of Criminal Procedure 2.8(2)(b) in taking his guilty plea. Yet McDaniel argues

that the statements he made to the court at that time were false; that he answered all of the questions the way his attorneys told him to; that he didn't have enough time to think about or talk over the plea offer; and that the plea was not of his own free will.

The district court found "none of McDaniel's testimony . . . credible whatsoever," especially his insinuations that he lacked the "maturity to appreciate the gravity of the situation or understanding his attorneys or the court during the plea proceeding." We defer to this credibility finding, which the record supports. *See Sothman*, 967 N.W.2d at 522.

At the postconviction-relief hearing, McDaniel's attorneys testified that he had about thirty minutes or so to decide whether to take the plea offer. Eimermann explained:

> [T]hese negotiations that we were having literally in the midst of the trial would have taken some time. . . . It wasn't something that happened really quickly. And so in the midst of all of that, we would have been talking with our client. So, you know, it took a little time for this to actually—actually come to pass.

And it was an offer that McDaniel had considered earlier in the case, rejected, and then sought again in the lead-up to the trial. While McDaniel wasn't happy with the mandatory minimum and testified that he "didn't really want to take it at the time," reluctance does not equal involuntariness. *See Puckett v. State*, No. 17-0839, 2018 WL 4922985, at *3 (Iowa Ct. App. Oct. 10, 2018); *accord State v. Speed*, 573 N.W.2d 594, 597 (Iowa 1998) ("Lawyers and other professionals often persuade clients to act upon advice which is unwillingly or reluctantly accepted. And the fact that such advice is unwillingly or reluctantly acted upon is not a factor overreaching defendant's free and clear judgment of what should be done . . . ." (cleaned up) (citation omitted)).

"No doubt no accused wants to be charged with crime, nor would he like to enter a plea of guilty in any case. The law contemplates that he have an uncoerced election to plead guilty or not guilty, after he has had the benefit and advice of competent counsel." *State v. Lindsey*, 171 N.W.2d 859, 865 (Iowa 1969) (citation omitted). McDaniel had that here. His attorneys testified their planned defense at trial was justification. But it was not a winning defense in their opinion because it was "essentially undisputed" that McDaniel chased down the victim and shot him with a gun. So they thought it was in his "best interests to take . . . anything that wasn't Murder in the First Degree." *See id.* ("The fact that an accused may elect to plead guilty to a lesser offense when he is also charged with a more serious offense does not make his plea coerced."). And they had "ongoing discussions" with McDaniel in the lead-up to trial about the strengths and weaknesses of his defense. When the plea offer was renewed, Adams testified that he presented it to McDaniel as he did with other clients: "I try to give them the pros and the cons. I try to answer their questions. And it's their choice. It's their case. It's their lives." "This is precisely the type of assessment we expect trial attorneys to do" when advising their clients about a plea offer. *McDanel v. State*, No. 21-0906, 2022 WL 3906779, at *2 (Iowa Ct. App. Aug. 31, 2022).

Because McDaniel's self-serving version of the events—which the district court found lacking in credibility—is contradicted by the record, we agree with the district court that McDaniel did not prove that his attorneys breached an essential duty. We affirm.

**AFFIRMED.**